ELLIS, Judge.
This proceeding was instituted by Clar•ence O. Lafleur, against the Texas and Pa•cific Railway Company to recover damages for the loss of three cows which were allegedly killed by one of the defendant railroad company’s trains. The amount sought was in the full sum of $750 and after a trial on the merits a judgment was rendered in favor of the plaintiff for $600 for the loss of three cows. From this unfavorable judgment the defendant has perfected a suspensive appeal.
The facts presented by the appellant and Iby the appellee herein are in direct conflict in a great many respects. It is not contested that the accident occurred at approximately 10:00 a. m. November 13, 1957. One of appellant’s employees testified to the effect that there were only two cows on the railroad right of way at the time the train struck appellee’s cattle. This testimony was elicited from the engineer. The fireman testified that he saw one cow struck but did not go back to look at the other cow and actually did not see but one cow which was struck on his side of the train. His reason for not viewing the dead cows is that the sight of blood was very distasteful to him. The engineer also stated that he was approximately 100 feet from the cows before he anticipated that they might be struck by the train and that when he had first seen them, at a point approximately 300 feet from the point of impact, they were lying down about forty feet from the track. He testified that as soon as he had reason to believe the animals might be struck by the locomotive, he blew the whistle and put on the brakes stopping at a point of approximately 65 feet beyond the point of impact. He testified that it was . open country around the train and he looked around after he stopped the train and did not see any one.
Another of appellant’s employees, the section foreman, testified that he was notified by the engineer that two cows had been struck and killed on the railroad right of way. He testified further that on the day he was so notified he went back to the point of the accident in a motor car with three laborers and buried the two cows which had been struck by the train. His crew finished burying the cows at about 1:00 o’clock in the afternoon. The section foreman also testified that he inspected the fences along the right of way for about a quarter of a mile on both sides at the point where the cattle were killed and found them in satisfactory condition. The section foreman testified that there were no other cattle on the railroad right of way in the vicinity of the accident, at the time he made his inspection, except the two dead cattle.
*846 A witness for appellee testified that he and another man were hunting rabbits in a field close to the track and near the point of the accident. Pie stated that there were approximately 20 head of cattle on the railroad right of way and that the train was going fast and did not slow down until after it hit the cows, at which time it stopped. He further testified that the train whistle was blown before the cows were struck and that two of the cows, which were struck were killed and one was injured. This witness’ testimony is substantially corroborated by the testimony of his companion.
At this point it is well to note that these witnesses were colored men and had, apparently, no interest whatsoever in the outcome of this case.
Counsel for appellant seeks in several instances to impeach their credibility. One discrepancy which is pointed out is that these witnesses testified that they tried to get the injured cow to stand up and that she could not stand and so they left her and went to tell an employer about the accident. The fact that the animal thereafter walked from the right of way and inside an adjoining pasture where it died is contended to be a discrepancy striking the veracity of the testimony. However, it is quite possible that the cow was so injured and stunned at the time of the accident that she could not stand, but that after she recovered somewhat from the force of the impact she did stand and walk through the fence into the adjoining field where she died.
Another instance is that one of the men stated that the dead cows were on top of the rails after they were struck. It is urged that this was a physical impossibility. This is a technical point and the gist rather than the very words of the testimony must be sought.
There is conflict in the record concerning the fences. However defendants have actually not borne the burden of proving that the cows did not get through the fence at a point where it was defective. Their mere presence on the right of way gives rise to this presumption in the absence of further proof.
Several other minor discrepancies are pointed out, each of which could be resolved in appellee’s favor. Suffice it to say that the discrepancies are not vital and each one is either irrelevant or may be reasonably construed in a fashion favorable to the district judge’s conclusions. There is ample testimony and evidence in the record to support the findings of the trial judge herein. No citation of authorities is required in applying the well-known rule that the trial court’s determinations concerning the credibility of the witnesses is entitled to great weight and its findings are not to be disturbed on appeal in the absence of manifest error.
The applicable laws are LSA-R.S. 45 :- 503, Par. 2 and LSA-R.S. 45:504, which read as follows:
LSA-R.S. 45:503, Par. 2
“ * * * Railroad companies shall not be responsible for the killing or injury of stock if their line of track is fenced in and kept in good order, and if they have erected and maintained, in good order, suitable cattle guards at crossings.”
LSA-R.S. 45:504:
“ * * * In suits against railroad companies for the loss of stock killed or injured by them, it is sufficient, in order for the plaintiff and owner to recover, to prove the killing or injury, unless it is shown by the defendant company that the killing or injury was not the result of fault or carelessness on their part or the negligent or indifferent running or management of their locomotive or train.”
We feel that the district judge correctly summarized the application of these statutory provisions, as follows:
*847 “ * * * the plaintiff, in order to recover for the death of his cattle from a railroad company has merely to show that he owns the cattle and that they were killed by the railway company. Then the burden shifts on the defendant to prove that it was not negligent in killing said cattle.”
Applying this rule to the facts as he found them the trial judge found that the defendant had failed to bear this burden of proof. For the reasons stated we agree with this holding and find that the trial court’s ruling concerning liability is correct.
The question of quantum has also been raised on appeal. An owner’s stock claim valuing each cow at $150 and executed by the appellee, Clarence O. Lafleur, when he first made claim against the defendant for damages was introduced into evidence over the objection of appellee’s attorney. However, an expert witness testified that the cattle in question would have been worth from twenty to twenty-seven cents per pound on the date they were killed. There is additional evidence that' the cattle were “heavy springers” and would bring a better price than average. Therefore we feel that the trial’s court valuation of twenty-five cents per pound or $200 for each of the 800 pound cows involved here was fair under the circumstances. A claim made far in advance of litigation and without advice or careful consideration should not be allowed to carry more weight than the testimony of an admitted expert. It is quite possible that plaintiff was actually mistaken and valued his lost cows too low and the preponderance of the evidence indicates that this is so.
For the reasons assigned the judgment of the trial court is affirmed in all respects at the costs of appellant
Affirmed.